UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CR595 HEA |
| | ) | |
| EMILIO SAENZ and MELISSA SAENZ, | ) | |
| | ) | |
| Defendants. | ) | |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Mary Ann Medler, [Doc. # 67], pursuant to 28 U.S.C. § 636(b). Both defendants have filed Objections to the Report and Recommendation, which recommended that defendant Emilio's Motion to Suppress, [Doc. 35], be denied and defendant Melissa's Motion to Suppress Evidence and Statements, [Doc. # 43], be denied. Defendants object to Judge Medler's findings of fact regarding whether the law enforcement personnel involved in this matter had reasonable suspicion to stop defendants.

When a party objects to the magistrate judge's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objected. See *United States v. Lothridge*, 324

F.3d 599, 600 (8th Cir.2003) (citing 28 U.S.C. § 636(b)(1)).  This includes a *de novo* review of the magistrate's findings of fact, including any credibility determinations.  *Id*.  The court has reviewed the entire record, including listening to the audio recordings of the hearings held on September 30, 2005, the preliminary hearing in Case Number 05mj2159 AGF, and November 15, 2005, the hearing on the motion to suppress, and reading the transcripts of the recordings from both hearings.

## **Objections to Findings of Fact**

The government presented the testimony of Special Agent James McHugh with the DEA.  He testified that he has been with the DEA for four years and that he has had training in the identification of controlled substances and the methods of operation of drug traffickers.  He also testified that some of his testimony was based on information he received from other officers.

SA McHugh's testimony sets forth the circumstances leading up to the arrest of defendants Emilio and Melissa Saenz, as detailed in the Report and Recommendation.  Defendants object to certain findings of fact by Judge Medler, arguing that the testimony lacks credibility of  "reasonable suspicion," the basis

upon which the defendants were stopped on the highway.[1]  Specifically, defendants argue the following inconsistencies in the testimony:

Defendants argue that SA McHugh "admits" that his affidavit was false in that there were actually two confidential informants, not just one.

Defendants also argue that the testimony establishes that the defendants could not have been in the St. Charles area, as the confidential source stated, on September 21, 2005 because the temporary tags on the blue pick up truck shows it was at the Ford dealership in Lubbock, Texas, on that date.

Likewise, defendants argue that the testimony regarding the red Ford F-150 truck was "a lie" because this truck was not in fact registered to Emilio, rather it was registered to someone else.  Defendants also argue that the temporary tag number given by the detectives was not the plate number, but the expiration number.

Defendants raise the issue of the lack of pictures of the truck in which the money was found. They also argue that the testimony at the preliminary hearing was that Melissa drove the truck into and out of the garage at Simon Hernandez's house

---

[1] Throughout the hearing and in argument, there was some testimony that defendants were stopped for traffic violations.  Defendants argue that this was a ruse.  Based on the entire record, the issue of whether traffic violations occurred is not significant because the facts establish that the stop was supported by reasonable suspicion.

and at the suppression hearing, the testimony was that Emilio drove the truck in and out of the garage.

Furthermore, defendants argue that much is made by the agents about the statements of Emilio and Melissa concerning the sale of the red Ford pick up to Simon Hernandez, but they were told the same thing by Simon Hernandez and they gave him back the truck since he said the same thing about his purchasing the truck. Defendants argue that Hernandez's statement regarding taking over the payments is consistent with defendants' statements that they did not know the purchase price for the truck.

Defendants also take issue with the amount of money seized. Different amounts of money were testified to and in the reports. The official count of the money reveals the total, including the funds found on Emilio's person, was $131,600.

Defendants argue that the testimony at the preliminary hearing and reports refer to the source's information that a wire transfer of $3,000.00 was made from Simon Hernandez to Melissa as the second "lynchpin" for reasonable suspicion. They argue, however, that it was, as testified to by Agent McHugh, in fact, a money order of over $3,000.00.

Additionally, defendants take issue with Detective Sodoma's testimony that

he questioned Melissa and Emilio, when the report indicates that Detective Senter conducted the interview.

Defendants raise other facts which they contend "should raise this Court's eyebrows and which defy common sense:" Hernandez lives in St. Charles, yet St Louis County detectives were surveilling the residence; Detective Sodoma had his dog Scooter with him during the moving surveillance; Agent McHugh had written disclaimer forms regarding the currency found, but did not have any written consent to search or *Miranda* forms; Wichita, Kansas is on Interstate 35 and not the "drug highway" from and to Texas (Interstate 44).

## **Discussion**

The record establishes that the focus of the stop was the reasonable suspicion that criminal activity may have been transpiring among the defendants in this case. Police officers are allowed to briefly stop individuals if they have a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1 (1968).

In this case, officers obtained information from confidential sources that Hernandez had been making money transfers, had inquired as to whether the government could check on the transfers and had transferred money to Melissa Saenz. Hernandez had also become upset when asked for identification. A check of Hernandez revealed that he was the subject of a drug trafficking investigation in

Texas. Officers began surveilling Hernandez's house.

When Emilio and Melissa arrived at Hernandez's home, officers observed the blue pickup truck being driven into the garage and driven out of the garage a short time after, approximately thirty minutes. Defendants proceeded onto the highway from Interstate 70, southbound to Interstate 270 and westbound onto Interstate 44. The Court agrees that the totality of the circumstances surrounding the stop give rise to a reasonable suspicion that criminal activity may be afoot.

Defendants objections with respect to factual inaccuracies in the testimony and reports fail to overcome the officers' reasonable suspicion that defendants may be involved in drug trafficking. The fact of whether it was a money order or a wire transfer to Melissa, or whether one or more confidential sources informed the officers, do nothing to negate the fact that a substantial amount of money was transferred from Hernandez to Melissa. Whether Melissa or Emilio drove the blue pick up out of the garage does not overcome the suspicious facts that a blue pickup truck was driven into Hernandez's garage, the door was closed and the truck was driven out a very short time thereafter. Whether the red pickup truck from Texas was registered to Hernandez or not or whether the officers wrote down the expiration date rather than the actual tag number do not eliminate the fact that a red Ford pickup with Texas license plates was located at Hernandez's house. The fact

that the pickup truck was in Texas on September 21, 2005 does not negate the fact that Emilio and Melissa arrived at Hernandez's and drove away 30 minutes later.

The significance of the specific amount of money found in the spare tire is clearly nonexistent. The officers explained the discrepancies and, when considering the circumstances of the discovery of the money, whether it was $116,000, $128,000 or 131,000 does nothing to deflate the significance of the fact that a very large sum of money was discovered in the spare tire of the blue pickup truck and neither Emilio or Melissa claimed to have knowledge of it. Likewise, the lack of any photographs fails to raise any question regarding the officers' reasonable suspicion of criminal activity. Although defendants argue that their explanation of the purpose of their presence at Hernandez's, to sell the red pickup to Hernandez who was supposedly taking over the payments, is credible because both defendants said it, and therefore they were unable to articulate a purchase price for the car, these statements "raise eyebrows" in light of the fact that Melissa told the officers that the money from the sale of the truck was in the blue truck, but that she didn't know where.

Defendants' objections to the testimony of Detective Sodoma that he questioned defendants *vis a vis* the form which indicates that Detective Senter conducted the interview are unpersuasive. This discrepancy merely establishes a

mistake in the preparation of the form as to the interviewer.

The remaining "discrepancies or irregularities in the testimony. . .that should raise this Court's eyebrows and which defy common sense []" which defendants raise are merely attempts to bolster defendants' arguments and do not negate the officers' reasonable suspicion.

Considering that defendants were stopped based on the officers' reasonable suspicion that drug trafficking may be occurring, defendants' objections to Judge Medler's findings of fact are denied.

Consent to Search

As set forth in the Report and Recommendation, defendants consented to the search of the blue pickup truck. The consents were voluntarily given.

An individual's voluntary consent allows a warrantless search and the evidence obtained from that search may be admitted at trial. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Voluntariness is a fact question to be determined from the totality of the circumstances. *Id*., at 226-27. Both defendants were asked twice whether the truck could be searched. Both defendants consented. Neither defendant was threatened or intimidated. They were detained for a short time. They were on a public highway ramp and dove themselves to the top of the exit ramp when requested. The facts clearly establish that the consent to search the

truck was voluntary and freely given.

Melissa's Statements

The statements defendant Melissa made after the reading of her *Miranda* rights are not subject to suppression; they were made after defendant stated that she understood those rights. There was no coercion, nor was there any indication that she was under the influence of drugs or alcohol. There were no threats or promises made to defendant at that time. Defendant voluntarily waived her right and her statements were voluntary and intelligent.

## Conclusion

The Court has conducted a *de novo* review of Judge Medler's Report and Recommendation. Based on the review of the entire record the Court, adopts Judge Medler's Report and Recommendation. Defendants' objections to the Report and Recommendation are, therefore, overruled.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Emilio Saenz's Motion to Suppress, [Doc. 35] and defendant Melissa Saenz's Motion to Suppress Evidence

and Statements, [Doc. No. 43] are denied.

Dated this 9th day of February, 2006.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE